IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                NO. CR 05-0144 RB

JERRY TRAXLER, ADAM LADUE,
and DENNIS DENNING,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Traxler's Motion for Leave to Identify and Produce Informant and Impeachment Evidence and Motion for Pretrial Hearing to Determine Admissibility of Alleged Co-conspirator's Statements, filed on February 17, 2005, and Defendant Denning's Motion to Suppress, filed on February 26, 2005. Traxler was permitted to join in the motion to suppress. On June 7, 2005, I held a hearing, received evidence, and heard arguments. Having considered the briefs, evidence, arguments of counsel, and being otherwise fully advised, I find that the motion to suppress and motion to produce informant should be denied, and that the motion for pretrial hearing on admissibility of co-conspirator's statements should be granted. If the government establishes that specific statements of Traxler were made in the course of, and in furtherance of, the conspiracy, those statements would qualify as co-conspirator statements under FED. R. EVID. 801(d)(2)(E).

**I.   Facts.**

      On October 26, 2004, a confidential informant ("CI") advised Midland Police Department

Detective Robby Mobley that Traxler and Ladue planned to drive to Mayhill, New Mexico in a white extended Ford Ranger pickup truck to purchase methamphetamine from a person named "Dennis," who planned to drive in from Arizona. Detective Mobley relayed the information to DEA Agent Cook in Midland, who relayed the information to DEA Special Agent Hansen in Las Cruces, New Mexico. Detective Mobley advised Agents Cook and Hansen that the CI had provided reliable information to him in the past.

On the morning of October 28, 2004, the CI contacted Detective Mobley and told him that Traxler and Ladue left Midland at approximately 8:30 a.m. Agent Hansen and other drug task force agents set up surveillance near Mayhill in five unmarked vehicles. At about 12:30 p.m., agents observed a truck with two Anglo males matching the description provided by the informant entering Mayhill. Initially, the CI had informed Mobley that the transaction would take place in Mayhill. However, the truck passed through Mayhill and continued on to Cloudcroft.

Once in Cloudcroft, the truck traveled around the village for about two hours in an erratic manner. The truck drove down side streets, pulled into parking lots and immediately exited, rapidly drove the wrong way through parking lots, and made sudden turns. Agent Hansen characterized this behavior as "heat runs," and explained such behavior was common for drug traffickers trying to detect or lose surveillance. Agent Hansen testified that the erratic driving was inconsistent with someone who was lost or unfamiliar with the village.

The truck continued on to Alamogordo, where Ladue rented a room at the Ace Motel. Detectives from Midland, who were participating in the surveillance, positively identified Traxler and Ladue at the motel. Ladue telephoned the CI four or five times. The CI relayed information that he or she received from Ladue to Officer Mobley, who was conducting surveillance. Specifically, the

CI informed Detective Mobley that "Dennis" was still in Arizona, but "the deal was still on." Throughout the rest of the day and the evening, the agents watched Traxler and Ladue run errands and make additional "heat runs" around Alamogordo. One heat run was at 4:30 a.m.

At about 10:00 a.m. on October 29, 2004, agents in unmarked cars followed the truck to Las Cruces, keeping it in sight the whole way. Once in Las Cruces, agents observed the Traxler/Ladue truck making additional "heat runs" around the north side of town. Eventually, Traxler and Ladue pulled into the Lowe's home improvement store parking lot and met a man and a woman in a green car with Arizona plates. Agents ran the plate number and determined that the green car was registered to Dennis Denning.

The Traxler/Ladue truck and the green car left the parking lot together. The agents observed no hand signals between the two vehicles and none of the suspects had exited a vehicle in the parking lot. Agents followed the Traxler/Ladue truck and the green car in five or six unmarked cars. The Traxler/Ladue truck was in the lead as they headed north on Del Rey Boulevard.

After about one mile, when they had reached a rural area, the suspect vehicles pulled onto the shoulder of Del Rey, stopped briefly, and made rapid U-turns towards the agents' vehicles. Three of the agents' vehicles also made U-turns. By this time, it was obvious that the surveillance had been compromised in that the suspects were aware that law enforcement was following them. The agents jumped out of their vehicles with guns drawn, stopped the Traxler/Ladue truck and the green car, and arrested the suspects at gun point. Agent Hansen testified that the agents drew their guns for officer safety.

After the stop, agents removed the suspects from the vehicles and advised them of their rights. DEA Agent Murphy and Agent Hansen interviewed Denning at the scene. Denning stated that he

planned to sell methamphetamine to Traxler and Ladue for $5,000. Both vehicles were searched at the scene. Agents found nine to ten ounces of methamphetamine in the Denning vehicle and an envelope with the "Ace Motel" and "Room 21" written on it. In the Traxler/Ladue vehicle, agents found $4,990 in cash concealed in a fake aerosol can with a false bottom. Traxler and Ladue were interviewed at the DEA office. Traxler declined to make a statement. The United States declined prosecution of the woman in the Denning car.

Traxler, Ladue, and Denning are charged by indictment with conspiracy to possess with intent to distribute more than 50 grams of methamphetamine (Count 1), possession with intent to distribute more than 50 grams of methamphetamine (Count 2), and aiding and abetting.

## II. Discussion.

### a) Denning's Motion to Suppress

In their briefs, Denning and Traxler argue that the stop and arrests were unsupported by reasonable suspicion or probable cause. At the hearing, defense counsel argued that the stop was an arrest because the agents exited their vehicles with guns drawn. The government argued that the stop and arrests were justified by reasonable suspicion and probable cause.

The Fourth Amendment prohibits unreasonable searches and seizures by the Government. U.S. CONST. amend. IV. The intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). Reasonableness is determined by balancing the governmental interest in crime prevention against the citizen's right to be free from governmental intrusion. *Id*. at 20-21. Brief investigatory stops and detentions of persons or vehicles that fall short of traditional arrest must be examined under the principles

4

announced in *Terry*. *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

The first inquiry under *Terry* is whether the stop was justified at its inception by reasonable suspicion of criminal activity. *United Stated v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005). A law enforcement officer may stop a person without probable cause for arrest if the officer has a reasonable and articulable suspicion that the person might be involved in criminal activity. *United States v. Maddox*, 388 F.3d 1356, 1361 (10th Cir. 2004). The agents had specific, articulable information that the two vehicles were involved in illegal drug activity. The material aspects of the CI's tip were corroborated by the agents' observations. The agents observed Traxler and Ladue engage in evasive maneuvers typical of drug traffickers on numerous occasions, in three different locales, over a period of two days. The agents followed the suspect vehicles as they drove in tandem to a remote location where they made abrupt U-turns. Based on the information known to the agents, there was reasonable suspicion for the stop.

The second *Terry* inquiry focuses on whether the stop was reasonable as conducted and encompasses the scope of the detention. *Terry*, 392 U.S. at 27-28. While *Terry* stops generally must be fairly nonintrusive, officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures. *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993). A precautionary show of force does not necessarily transform a lawful *Terry* stop into an arrest. *Id.*, 8 F3d at 1463; *see also United States v. Merritt*, 695 F.2d 1263, 1273 (10th Cir. 1982). The stop occurred in a rural location near a heavily populated area. Agents suspected that the occupants of the vehicles were engaged in a methamphetamine deal. I take judicial notice that drug traffickers commonly carry firearms. The suspect vehicles had engaged in rapid U-turns just before the stop. The successive U-turns exposed the surveillance. The fact that the suspects had attempted previously

5

to detect and evade surveillance suggested that the suspects would flee, thereby causing a dangerous chase situation and/or destruction of evidence. Under these circumstances, the officers were justified in drawing their guns in conducting the stop.

The scope of the detention was reasonable in this case. Officers may detain motorists for questioning unrelated to the initial traffic stop if they have an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning. *See United States v. Galindo-Gonzales*, 142 F.3d 1217, 1221 (10th Cir. 1998). The CI informed Mobley that the objective of the trip was to buy methamphetamine. The agents were justified in detaining the suspects to question them about drugs. At the scene, Denning stated that he planned to sell methamphetamine to Traxler and Ladue for $5,000. The agents found methamphetamine in Denning's car.

Probable cause to arrest exists only when the "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892 (10th Cir. 2004). Denning confessed that he planned to sell methamphetamine to Traxler. Agents found the methamphetamine in Denning's car. Based on the information possessed by the arresting officers, a reasonable officer would have believed that there was probable cause to arrest the Defendants.

**b) Traxler's Motion for Leave to Identify and Produce Informant and Impeachment Evidence.**

Traxler requests an order requiring the government to disclose the identity of the informant

and evidence relating to the informant's credibility.  The government states that it will not call the informant at trial.

The Tenth Circuit has stated that:

> A defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case. In determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. The court conducts this balancing in light of the crime charged, the possible defenses, and the significance of the informant's testimony. Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret [the informant's] identity must prevail over the defendant's asserted right of disclosure.

*United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999) (citing *Roviaro v. United States*, 353 U.S. 53, 62 (1957)).

The defendant must show that the testimony of a confidential informant is "valuable to a defendant; mere speculation is not enough." *United States v. Leahy*, 47 F.3d 396, 398 (10th Cir. 1995).  Disclosure is inappropriate where the informant has limited information, was not present during commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory.  *See Gordon*, 173 F.3d at 767-68.

Traxler argues that the disclosure of the CI is integral to the case because the tip initiated the investigation, the CI provided continuing corroboration during the investigation, and Agent Hansen had no independent knowledge as to the CI's reliability.  Although Traxler stated that the CI is a necessary fact witness to the case, he has not explained what the informant could add to his defense.  While it is true that the CI relayed information to agents during the surveillance, he or she was not present during the offense.  The testimony of the CI would be cumulative of the agents' testimony.

The stop was justified by the agents' personal observations of suspicious behavior. Traxler has not identified any exculpatory information that the informant could offer. Because Traxler has offered nothing more than speculation, he has failed to satisfy his burden of demonstrating disclosure of the informant's identity would contribute meaningfully to his defense.

### c) Traxler's Motion for Pretrial Hearing to Determine Admissibility of Co-conspirator Statements

When they were arrested, Ladue and Denning made statements to agents concerning statements and activities of Traxler during the course of the conspiracy. The government states that it will not seek to admit co-conspirator statements prior to a ruling that such statements are admissible. Counsel do not know whether Ladue will testify at trial.

When considering whether to admit purported co-conspirator statements, a district court must determine that the statements fall within FED. R. EVID. 801(d)(2)(E)'s definition. *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Rule 801(d)(2)(E) provides for the admission of an out-of-court statement "by a co-conspirator of a party during the course and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E).

In the Tenth Circuit, the trial court must find that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of, and in furtherance of, the conspiracy. *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). After they were arrested, Ladue and Denning made statements to the officers concerning statements made to and by Traxler during the course of the conspiracy. The government established, that by a preponderance of the evidence, a conspiracy existed and Denning, Traxler, and Ladue were members of the conspiracy. If the government

establishes that specific statements were made in the course of, and in furtherance of, the conspiracy, the statements would qualify as co-conspirator statements under FED. R. EVID. 801(d)(2)(E).

Counsel has not addressed, and I express no opinion herein, as to whether *Crawford v. Washington*, 541 U.S. 36 (2004), would bar admission of the post-arrest statements to agents.

**WHEREFORE,**

**IT IS ORDERED** that Traxler's Motion for Leave to Identify and Produce Informant and Impeachment Evidence and Denning's Motion to Suppress are denied.

**IT IS FURTHER ORDERED** that Traxler's Motion for Pretrial Hearing to Determine Admissibility of Alleged Co-conspirator's Statements is granted. If the government establishes that specific statements of Traxler were made in the course of, and in furtherance of, the conspiracy, those statements would qualify as co-conspirator statements under FED. R. EVID. 801(d)(2)(E).

*/s/ Robert Brack*

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**